**Barbara Rule, Appellee, v. Allen Rule, Appellant.**

**Gen. No. 9,693.**

Opinion filed January 27, 1942.

JAMES E. DAVIS, of Galesburg, for appellant; ARMOR H. MORELAND and LUCIEN S. FIELD, both of Galesburg, of counsel.

M. E. NOLAN, of Oquawka, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On the 28th day of November 1939, a decree of divorce was entered in the district court in Elko, Nevada, in favor of the defendant, Allen Rule, and against the plaintiff, Barbara Rule. The decree, among other things, ordered the defendant to pay to the plaintiff in weekly instalments, alimony in the sum of $17.50 for her benefit, and for the support of their minor children. The present action was started by Barbara Rule against Allen Rule in the circuit court of Knox county, Illinois. The defendant now lives in Knox county. After setting forth the final equity decree for alimony entered in the State of Nevada, the complaint alleged that the defendant failed to pay alimony, which had become due and payable prior to the institution of this action. The plaintiff prays for a judgment for the amount of accrued unpaid alimony, and for all future monthly instalments, as they become due, in accordance with the provisions of the Nevada decree, and that the decree of the Nevada court for alimony, be established here as a foreign judgment, and be enforced by appropriate equitable remedies, as is usual in such cases.

The defendant filed a motion to strike the plaintiff's complaint and stated that under the statutes of the State of Illinois giving full faith and credit to foreign judgments, that only relief at law is recognized, and the courts of this State have no power to enforce a decree in equity entered in a foreign jurisdiction; that the said suit seeks only equitable relief; that by said complaint, said suit is not one in debt declared upon a decree of a foreign jurisdiction. The court overruled defendant's motion to strike. The defendant stood by his motion and refused to plead. A hearing was had on the verified complaint (for want of answer), and a decree was rendered in favor of the plaintiff. It is from this decree that the appeal is prosecuted.

The court held that the divorce decree between the parties of the State of Nevada be given full faith

and credit by this court, and that the provisions for the payment of alimony for the support of the minor children of the parties, as provided in said decree, be adopted and confirmed by the Knox county court, as a basis for the decree in said court the same as if originally entered in that court. The court further found that the defendant was in arrears in his payment of alimony in the sum of $423.75 and that the defendant was in default in said payments. It is further ordered and decreed that the defendant pay to the plaintiff, the sum of $17.50 on Saturday of each week for the care, maintenance, education and support of the minor children belonging to the plaintiff and defendant; that said payments are to continue until the minor child, John Rule, shall reach the age of 21 years, when the payments are to be reduced to $8.75 until the minor child, Robert Rule, shall reach the age of 21 years, as was provided in the Nevada decree; that if the Nevada decree is modified by the district court of the county of Elko and State of Nevada, then upon a showing to the Knox county court, the present decree should be modified accordingly.

The question before us has not been passed upon by our Supreme or Appellate Courts. The decisions in other courts are not in harmony. We have reviewed these decisions and have determined what we consider would be the better rule to announce as the law in this case. This being a case of first impression, we feel at liberty to adopt that rule which, in our judgment, best conforms to the principles of equity, and which tend to the furtherance of justice. A number of courts have adopted the view that alimony due under a decree of a foreign court is merely a debt, collectible only by execution upon a judgment recovered locally upon the foreign decree, and, the remedy at law for its enforcement being complete and adequate, equity has no jurisdiction to undertake its enforcement by contempt

or other equitable relief. On the other hand there is considerable authority supporting the proposition that a decree for alimony represents more than a debt; that its basis is the obligation of a husband to support his wife and children, which is a matter of public concern, whether the cause of action arises in the State where the decree is rendered, or in another State to which the parties have moved; that the urgency for its effective enforcement is equally as great in one State as in another; therefore, it should be enforced by the same remedies as are applicable to domestic decrees for alimony. In this view the courts of one State will enforce a foreign decree for alimony, or, more accurately speaking, a local judgment based on a foreign decree for alimony will be enforced by equitable remedies, as by contempt proceedings against the defendant for not complying with the judgment of the court, as is customary in the enforcement of local decrees for alimony.

In the case of *Fanchier v. Gammill,* 148 Miss. 723, 114 So. 813, the parties to the suit procured a divorce in the district court at Reno, Nevada, in which the husband agreed and was ordered to pay to the wife, alimony at the rate of one hundred dollars per month. He was in arrears in the payment of alimony in the sum of eight hundred dollars. The ex-wife brought suit against her former husband in the State of Mississippi. In her bill, she prayed that the courts of Mississippi would establish and enforce the Nevada divorce decree for alimony by and through the court of equity of that State. The Supreme Court of Mississippi, in passing upon the merits of the controversy, uses this language: "It is our view that, on account of the character of a judgment for alimony, which rests, to some extent, upon public policy, in requiring a husband to support his wife and children, due to the sacred human relationship, and that they may not become public charges and derelicts, the de-

cree for alimony, with the extraordinary power of enforcement by attachment and contempt proceedings, should be established and enforced by our equity court, which has full and sole jurisdiction of all matters of divorce and alimony; because to hold that a foreign judgment for alimony can be enforced in this state only by execution, the same as judgments at law, would be to impair or to deprive a foreign judgment for alimony of its inherent power of enforcement by attachment and contempt proceedings. Thus, as we view it, to so hold would be to disregard the 'full faith and credit' clause of the federal law, which we interpret to mean that the judgment, with its peculiar right of enforcement, as one for alimony, should be established and enforced by the equity courts of our state in the same manner, and to the same extent, as it could have been enforced by our court if originally obtained in our state.

"A judgment or decree for alimony carries with it a special power and right of enforcement not given in judgments at law. There is a difference between a judgment for money or property and that of a decree for alimony; and the decree for alimony, because of such difference in the character of the obligation, may be enforced by more efficient and effective means than those given to the enforcement of judgments at law. Why should this extraordinary right of enforcement, due to the character of the judgment, be destroyed and annulled in its power, when it is attempted to be established and enforced in our state upon a decree rendered in a foreign state? An insolvent husband would become immune from the alimony decree if such was the law. It would amount to a partial sterilization of the force of the judgment for alimony.

"There can be no sound reason for such a view. We should not hold that all foreign judgments are alike when it comes to enforcing them in our state, and that execution on a judgment at law is the only method that can be prosecuted, even though such foreign

judgment be one for alimony; that such judgment cannot be enforced by proceedings to attach or cite defendant before the court to show cause why he should not be punished for contempt in failing to carry out his obligation to pay alimony to his wife, as solemnly decreed by a court of competent jurisdiction. Such a view is not the better one; and, while there may be respectable authority to support it, we decline to follow it and shall adopt that rule which allows the enforcement of a foreign decree for alimony in the same manner that it could have been enforced, if originally obtained here, to wit, by attachment and contempt proceedings in the chancery court of our state.''

The Supreme Court of Iowa held that where the court of the State of Washington had personal jurisdictions of the parties to a divorce proceeding and has rendered a decree requiring the defendant husband to convey land in Iowa to the wife and the husband prevents the Washington court from enforcing compliance with the order by leaving the State and going to the State of Iowa, an Iowa court may render a decree *in personam,* against the husband requiring him to convey the land to his wife. *Matson v. Matson,* 186 Iowa 607, 173 N. W. 127.

The Supreme Court of California held that where a judgment for alimony due the plaintiff under a decree of a sister State was in form, a money judgment, a judgment obtained thereon in California, was in fact an alimony judgment, and hence was enforceable to the same extent and by the same legal methods which are applicable to a judgment originally rendered in California and which makes provision for alimony payments. *Bruton v. Tearle,* 7 Cal. (2d) 48, 59 P. (2d) 953; *Creager v. Superior Court of Santa Clara County,* 126 Cal. App. 280, 14 P. (2d) 552; *Morrow v. Morrow,* 40 Cal. App. (2d) 474, 105 P. (2d) 129.

The Supreme Court of South Carolina announced the rule that a decree for alimony granted by a foreign court in a divorce proceeding, may be established and

enforced by and through the equity courts of South Carolina, and that they may assume jurisdiction thereof, and there is no necessity that resort should be made to an execution on a judgment recovered locally on a foreign decree. This was allowed, although divorces from the bonds of matrimony are not allowed in the State of South Carolina. *Johnson v. Johnson,* 194 S. C. 115, 8 S. E. (2d) 351; *Johnson v. Johnson,* 196 S. C. 474, 13 S. E. (2d) 593, 134 A. L. R. 318. In the case of *German v. German,* 122 Conn. 155, 188 Atl. 429, the Supreme Court of the State of Connecticut decided that a New York resident could bring an equitable action in the superior court in the State of Connecticut to enforce a New York decree for alimony against a Connecticut resident as regards past due payments, and the Connecticut court could give any appropriate remedies applicable in an action brought to it in its capacity as a court of equity.

The Supreme Court of Washington in the case of *Shibley v. Shibley,* 181 Wash. 166, 42 P. (2d) 446, decided that a wife is entitled to recover unpaid alimony payments pursuant to a modified decree entered by a court of another State, where, by the law of that State the decree was final, since judgments for alimony were not subject to modifications as to sums already accrued, notwithstanding the fact that the court of the other State upon stipulations of husband and wife, had once modified the decree as to past due payments of alimony.

In the case of *Cousineau v. Cousineau,* 155 Ore. 184, 63 P. (2d) 897, the plaintiff had procured a divorce in the State of California and had been granted alimony by the decree of the court. The defendant was in arrears in the payment of the alimony. The plaintiff started suit in the State of Oregon to establish the California decree as an Oregon decree. The Supreme Court of Oregon held that the plaintiff was entitled to establish and enforce the decree of the Cali-

fornia court for alimony, and for the custody and support of the child of the parties in the same manner as the California court, and to render favorable to the plaintiff the remedies of a court of equity for the enforcement of the decree when established as to future payments, as they accrued, as well as overdue payments of alimony.

In the case of *Miller v. Miller,* 186 Okl. 566, 99 P. (2d) 515, the wife obtained a divorce decree in the State of New Jersey on service by publication, and without an attempt to determine what alimony, if any, she should receive. The Supreme Court of the State of Oklahoma held that she could maintain a suit in the State of Oklahoma in a subsequent action to determine the amount of and recover permanent alimony.

These courts have announced and adhere to the rule that a divorce decree in one State can be established as a foreign decree and enforced in their local courts. We are aware that the highest courts of several of the other States have announced a contrary rule. This rule, in whole or in part, is in effect supported by cases from the States of Massachusetts, Michigan, New Jersey, New York and the District of Columbia, but we think the principle of equity and justice are best promoted by the rulings which have been announced in the cases reviewed herein and should be followed.

The decree of the circuit court of Knox county should be and is affirmed.

*Affirmed.*